**LEECH TISHMAN ROBINSON BROG, PLLC**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300
Fred B. Ringel
Steven Eichel
Clement Yee
*Attorneys for the Mezz Debtors*
*Proposed Attorneys for the PropCo Debtors and*
*Common Member Debtor*

**Hearing Date:**
**Hearing Time:**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

In re:

**STARLIN LLC** *et al.*,[1]

                                   Debtors.

--------------------------------------------------------X

In re:

**175 SPRING STREET LLC et al.**,[2]

                                   Debtors.

--------------------------------------------------------X

Chapter 11

Case No. 22-10888 (MG)

(Jointly Administered)

Chapter 11

Case No. 22-

(Joint Administration Requested)

## DEBTORS' MOTION TO APPROVE SETTLEMENT AGREEMENT

**Starlin LLC** and its affiliates, as debtors and debtors in possession

(collectively, the "Debtors"), by their undersigned proposed attorneys, Leech

---

[1] The Mezz Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  Starlin LLC (6765); 610 West 46th Street Enterprises, Ltd. (1937); RM Holdings Company Inc. (2733); BRC Owners, L.P. (5295); RG Mezz LLC (2437); RG Mezz III LLC (2895); RG Mezz V LLC (9871); and RG Mezz VI LLC (8222).

[2] The Propco Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  175 Spring Street LLC (4249); 610 West 46th Street LLC (3898); 616-620 West 46th Street LLC (3706); 616 11th Avenue LLC (5258); 609 11th Avenue LLC (5047); 613 11th Avenue LLC (6820); 617 11th Avenue LLC (9177); 623 11th Avenue LLC (5464); 108 Merrick Boulevard LLC (3250); and 533 West 27 Street Common Member LLC (4581).

Tishman Robinson Brog, PLLC,  files this motion ("Motion") pursuant to Rule 9019
of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") seeking the
entry of an order, a copy of which is annexed to this Motion as Exhibit "A",
approving the settlement agreement ("Settlement Agreement" or "Agreement"), an
executed copy of which is annexed to the proposed order as Exhibit "1", between the
Debtors and Clinton PB Holdings I LLC, Clinton PB Holdings II LLC, and Clinton
PB Holdings III LLC (collectively, the "CPBH Entities"), which Agreement, among
other things, effectively resolves all pending claims and disputes between the
parties.  In support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C.
§§157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28
U.S.C. §157(b)(2)(A).[3]

2.      Venue is proper in this District pursuant to 28 U.S.C. §§1408 and
1409.

3.      The statutory basis for the relief below is §105(a) of Title 11 of the
United States Code, 11 U.S.C. §§101, *et seq.* (as amended, "Bankruptcy Code") and
Bankruptcy Rule 9019.

### BACKGROUND

4.      On June 28, 2022 ("Mezzanine Borrower Petition Date"), Starlin LLC,
610 West 46th Street Enterprises, Ltd., RM Holdings Company Inc., BRC Owners,

4878-2123-5763, v. 1

L.P., RG Mezz LLC, RG Mezz III LLC, RG Mezz V LLC, RG Mezz VI LLC (collectively, "Mezz Borrower Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code.

5. The Mezz Borrower Debtors are operating their businesses and managing their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this Motion, no trustee, examiner or committee has been requested or appointed.

6. The Mezz Borrower Debtors are entities that own the equity interests in the limited liability companies, limited partnerships or corporations that are the owners of real property and improvements located mainly in the Midtown West area of New York City. The properties are located at 175 Spring Street, 610 West 46th Street, 616-620 West 46th Street, 616-624 11th Avenue, 603 West 45th Street a/k/a 609-611 11th Avenue, 613-615 11th Avenue, 617 11th Avenue, and 623 11th Avenue in New York, New York, as well as 108-02 and 108-16 Merrick Boulevard, in Queens, New York (collectively, "Properties").

7. The Mezz Borrower Debtors are each a borrower under a Mezzanine Loan Agreement pursuant to which the applicable Debtor granted liens to Midtown West Portfolio Lender LLC ("Original Mezzanine Lender"), an affiliate of the Bluestone Group. On or about April 15, 2022, the Original Mezzanine Lender assigned its right, title and interest in the mezzanine loan to Clinton PB Holdings II LLC, ("Mezzanine Lender") a newly formed entity affiliated with Princeton Real

---

[3] To avoid any ambiguity, Mr. Gans consents to jurisdiction of the Bankruptcy Court for purposes of

4878-2123-5763, v. 1

Estate Partners and Extell Development Company. The mezzanine loan was in the original principal amount of $17,760,000 and was subsequently paid down to $15,820,909.

8.     On September 14, 2022 ("PropCo Debtors Petition Date"), in furtherance of the transactions contemplated by the Agreement, 175 Spring Street LLC, 610 West 46th Street LLC, 623 11th Avenue LLC, 617 11th Avenue LLC, 616 11th Avenue LLC, 108 Merrick Boulevard LLC, 613 11th Avenue LLC, 609 11th Avenue LLC, 616-620 West 46th Street LLC (collectively, "PropCo Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code.

9.     The PropCo Debtors are operating their businesses and managing their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the filing of this Motion, no trustee, examiner or committee has been requested or appointed.

10.     The PropCo Debtors are the owners of the Properties and the equity interests in the PropCo entities are owned by the Mezz Borrower Debtors.  The real property and improvements owned by the PropCo Debtors are located at these addresses:

| Debtor | Property |
| --- | --- |
| 175 Spring Street LLC | 175 Spring Street, NY, NY |
| 610 West 46th Street LLC | 610 West 46th Street, NY, NY |
| 616-620 West 46th Street LLC | 616-620 West 46th Street, |

approval and implementation of the Settlement Agreement.

|  | NY, NY |
| --- | --- |
| 616 11th Avenue LLC | 616-624 11th Avenue, NY, NY |
| 609 11th Avenue LLC | 603 West 45th Street a/k/a 609-611 11th Avenue, NY, NY |
| 613 11th Avenue LLC | 613-615 11th Avenue, NY, NY |
| 617 11th Avenue LLC | 617 11th Avenue, NY, NY |
| 623 11th Avenue LLC | 623 11th Avenue, NY, NY |
| 108 Merrick Boulevard LLC | 108-02 and 108-16 Merrick Boulevard, Queens, NY |

11.     Six of the Properties are contiguous and make up roughly half of a square city block on the west side of 11th Avenue between 45th and 46th Street.[4] Certain of these properties are or were leased to Metropolitan Lumber, Hardware & Building Supplies, Inc. ("Met Lumber"), an entity that conducts a building supply business from the premises.[5]   The six properties, referred to here as the "Assemblage" or the "West Side Parcels", consist of (i) 610 West 46th Street, (ii) 616-620 West 46th Street, (iii) 603 West 45th Street (a/k/a 609-611 11th Avenue), (iv) 613-615 11th Avenue, (v) 617 11th Avenue, and (vi) 623 11th Avenue.[6]   The West Side

---

[4] See Exhibit "B" annexed hereto. The blue shaded properties on Exhibit "B" of the Properties owned by the PropCo Debtors. The red shaded property is the Property leased by Argo 45 LLC and subject to the Purchase Option (defined herein) that Argo 45 LLC has exercised and is expected to close on September 19, 2022.

[5] Met Lumber and the Debtors are indirectly controlled by Robert Gans ("Gans").

[6] The 616-624 11th Avenue property is located directly across the street from the West Side Parcels.

Parcels have an aggregate land measurement of approximately 58,000 square feet, plus as of right development rights to build vertically.

12.     As noted below and in the Settlement Agreement, Argo 45 LLC ("Argo 45") is an entity where Gans is the sole member and that has rights to acquire a parcel comprising part of the Assemblage.  Argo 45 has not yet filed a voluntary petition under chapter 11 of the Bankruptcy Code but intends to do so on or about September 20, 2022 as contemplated by the Settlement Agreement.

13.     On September 14, 2022, 533 West 27 Street Common Member LLC ("Gans Member" or "Common Member") filed a voluntary petition under chapter 11 of the Bankruptcy Code. Common Member does not currently own any property but was the entity through which Gans invested in a property located at 533-535 West 27th Street New York, New York ("27th Street Property").[7]  Specifically, the 27th Street Property was owned by Westside Realty of New York, Inc. ("Westside"), which was, in turn, owned by 533 West 27 Street JV LLC ("JV").  Common Member owned 100% of the common interests in JV, while 534 West 28th Pref LLC ("Initial Pref Member") owned 100% of the preferred interests in JV, which preferred interests were granted to Initial Pref Member in exchange for a $5,000,000 investment in the JV ("Pref Loan").  In connection with the acquisition of its preferred position, the Initial Pref Member also received a pledge of the equity ownership interests in Westside, and a pledge of Gans Member's membership

_____

[7] The 27th Street Property is sometimes referred to as 534-536 West 28th Street, New York, New York.

6

interests in the JV.  On August 11, 2021, there was a UCC sale ("West 27 UCC Sale") of the membership interests of Gans Member in the JV.

14.     On or about September 21, 2018, certain Debtors and various non-Debtor affiliates[8] entered into a Mortgage Loan Agreement (as the same has or may have been amended, "Senior Loan Agreement") with CMTG Lender 23 LLC ("Initial Mortgage Lender") for a loan in the principal amount of $130,240,000, which was subsequently paid down to $116,020,000 ("Senior Loan"), secured by a mortgage on certain properties described therein.  Also on September 21, 2018, in connection with the Senior Loan, Gans executed, among other things, a Mortgage Loan Guaranty of Recourse Obligations in favor of the Initial Mortgage Lender.

15.     On September 21, 2018, certain of the Debtors and non-Debtors[9] entered into a Mezzanine Loan Agreement (as the same has or may have been amended, "Mezz Loan Agreement") with Original Mezzanine Lender for a loan in the principal amount of $17,760,000 which was subsequently paid down to $15,820,909 ("Mezz Loan"), secured by various pledge and security agreements.  In connection with the Mezz Loan, also on September 21, 2018, Gans executed, among

---

[8]The initial Mortgage Borrowers under the Senior Loan are: Westside Realty of New York, Inc., 175 Spring Street LLC, 616 11th Avenue LLC, 610 West 46th Street LLC, 613 11th Avenue LLC, 617 11th Avenue LLC, 623 11th Avenue LLC, 616-620 West 46th Street LLC, 609 11th Avenue LLC, 34 Steinway Street LLC, 108 Merrick Boulevard LLC, Barracuda II LLC, Cleftone LLC, and Conquistador LLC.

[9]The initial Mezz Borrowers under the Mezz Loan are Debtors Starlin LLC, 610 West 46th Street Enterprises, Ltd., BRC Owners, L.P., RG Mezz III LLC, RG Mezz LLC, RG Mezz V LLC, RM Holdings Company Inc., and RG Mezz VI LLC , and non-debtors 533 West 27 Street JV LLC, RG Mezz I LLC, RG Mezz IV LLC, and RG Mezz II LLC.

7

other things, a Mezzanine Loan Guaranty of Recourse Obligations in favor of the Original Mezzanine Lender.

16.     On March 31, 2020, Initial Pref Member and BRC Owners, L.P. entered into a Pledge Agreement (Membership Interests in Starlin LLC) pursuant to which the Initial Pref Member agreed to extend the date by which the Pref Investment was to be repaid ("Redemption Date") to September 8, 2020, in exchange for BRC Owners, L.P.'s pledge of its membership interests in Starlin LLC and its rights as a creditor of Starlin LLC as collateral for payment and performance of the Guaranteed Recourse Obligations (as defined in the Supplemental Guaranty dated March 31, 2020).  In connection with the extension of the Redemption Date, BRC Owners, L.P. executed a Supplemental Guaranty dated March 31, 2020, in favor of the Initial Pref Member.

17.     On April 15, 2022, Clinton PB Holdings I LLC advised the Debtors that the Senior Loan was assigned to and assumed by Clinton PB Holdings I LLC.

18.     On April 15, 2022, Clinton PB Holdings II LLC advised the Debtors that the Mezz Loan was assigned to and assumed by Clinton PB Holdings II LLC.

19.     On April 15, 2022, Clinton PB Holdings III LLC advised the Debtors that the Pref Investment position was assigned to and assumed by Clinton PB Holdings III LLC.

20.     Initial Pref Member has asserted that the Pref Loan has been in default since April 2020.

8

21.     The Mortgage Borrowers and the Mezz Borrowers assert the Debtors have been in default under the Senior Loan and the Mezz Loan since January 2020.

22.     On October 14, 2021, the Initial Mortgage Lender filed a Summons and Complaint for Foreclosure in Supreme Court for the State of New York, New York County, in an action captioned (as amended) *CMTG Lender 23 LLC v. Westside Realty of New York, Inc., et al.*, Index No. 850241/2021 (Sup. Ct., N.Y. Cnty.) ("Foreclosure Action"), pursuant to which Initial Mortgage Lender sought, among other relief, a judgment of foreclosure under the mortgage securing the Senior Loan. Certain of the defendants therein asserted counterclaims and various defenses disputing the Initial Mortgage Lender's claims in the Foreclosure Action. On August 22, 2022, the Court entered an order substituting Clinton PB Holdings I LLC as the named plaintiff in the Foreclosure Action and amending the caption in the Foreclosure Action to *Clinton PB Holdings I LLC v. Westside Realty of New York, et al.*

23.     On May 2, 2022, Clinton PB Holdings I LLC filed a Complaint, which was subsequently amended by an Amended Complaint dated July 27, 2022, in an action captioned *Clinton PB Holdings I LLC v. 175 Spring Street LLC, et al.*, Index No. 652059/2022 (Sup. Ct. N.Y. Cnty.) ("Argo 45 Action"), pursuant to which Clinton PB Holdings I LLC sought an order directing Mortgage Borrowers and Gans to perform alleged obligations under the Senior Loan Agreement and the Mortgage Loan Recourse Guaranty to cause Argo 45 to exercise and consummate a purchase option set forth in Argo 45's lease for premises known as 605 West 45th Street, New

9

York, New York (Block 1093, Lot 28) and to grant Clinton PB Holdings I LLC liens on such property as additional collateral for the Senior Loan.

24.    On June 23, 2022, Clinton PB Holdings II LLC provided notice of its intent to conduct a UCC foreclosure of equity interests in the Mortgage Borrowers' equity interests that were pledged as collateral for the Mezz Loan.

25.    In 2021, Gans transferred the family's vacation home to his daughter. Gans has stated that he made such transfer for estate planning purposes. The CPBH Entities dispute the validity of this transfer. On June 24, 2022, Clinton PB Holdings I LLC and Clinton PB Holdings II LLC filed a complaint in an action captioned *Clinton PB Holdings I LLC, et al. v. Robert Gans, et al.*, Index No. 656967/2022 ("Conveyance Action"), pursuant to which Clinton PB Holdings I LLC and Clinton PB Holdings II LLC sought: (i) a judgment against Gans and Caren Gans setting aside Gans' transfer of the properties to his daughter, Caren Gans under New York's version of the Uniform Fraudulent Transactions Act; (ii) an injunction against Gans barring the transfer of any other assets; and (iii) in the alternative, damages for Gans' alleged breach of the applicable guaranties.

26.    The Debtors and the CPBH Entities and Gans have been engaged in negotiations on and off for more than one year before reaching the agreement encompassed in the Settlement Agreement. Both sides have had the assistance of experienced and sophisticated counsel and the Debtors have also had the assistance of Getzler Henrich as their Financial Advisor in exploring the various alternatives. To avoid the substantial costs and uncertainty of further litigation between the

4878-2123-5763, v. 1

parties, the parties have determined to resolve all outstanding claims and disputes between them by mutual agreement on the terms and subject to the conditions set forth in the Agreement and through a consensual chapter 11 process.

## THE SETTLEMENT AGREEMENT

27.    The Settlement Agreement, once it is approved by the Court and its terms are implemented through timely performance by each of the Debtors and each of the CPBH Entities, will result in a consensual, global resolution of over $240 million dollars of claims by and between over 25 entities and individuals in what has been a contentious dispute that has been ongoing since at least 2020. As a result, the Debtors' properties will be developed in the near future through either (i) a refinancing or sale under a Chapter 11 plan in satisfaction of the CPBH Entities' claims at a significant discount of more than $45 million (which voluntary discount grows by the continued accrual of *default* interest that would not be charged as part of the Settlement Amount); or (ii) surrendered to the CPBH Entities if the Debtors are unable to consummate a transaction allowing for the timely payment of the reduced Settlement Amount, in either case in full and complete satisfaction of any and all of the CPBH Entities and affiliates secured and unsecured claims against the Debtors Gans and his  family members.  This global settlement also saves each side[10] untold millions of dollars in legal and related expert and other associated expenses as well as the uncertainty of multiple litigations that could take an extended period to resolve. Importantly, the settlement amicably resolves disputes

11

between the parties and provides for a substantial voluntary reduction – in excess of $45 million (including the waiver of default rate for interest) – of claims asserted against the Debtors' estates and resolves multiple pending litigations while affording the Debtors, and Mr. Gans, the opportunity to repay a materially reduced claim.

28.     The salient terms of the Agreement are summarized in paragraphs 29 through 44 below. The Court is respectfully referred to the Settlement Agreement for the complete terms of the party's agreement for which approval is sought under Bankruptcy Rule 9019.

29.     **Allowed Claim.** The CPBH Entities will receive an allowed claim, which is as of September 6, 2022, in the amount of $237,230,043, subject to continued accrual of interest at the default contract interest rate, incurrence of costs and expenses, and payment of CPBH Entities' professional fees and expenses (such claim, "Allowed Claim").  The Allowed Claim will be further increased by the Argo 45 Option Purchase Price (as provided for below) to the extent funded by or on behalf of one or more of the CPBH Entities.  The Allowed Claim is secured by all of the assets of the Gans Entities[11] other than Gans.

30.     **Settlement Amount.**  Subject to the terms of the Agreement, the CPBH Entities agree to accept a material voluntary reduction of their Allowed Claim as payment of the Settlement Amount (as defined below).  To obtain this benefit, the

---

[10] Ultimately, this cost savings benefits the Debtors' estates which would otherwise be subject to reimbursement claims for costs associated with the enforcement of remedies by the CPBH Entities.

4878-2123-5763, v. 1

Debtors must pay the CPBH Entities an amount equal to the sum of (i) $200 million, plus (ii) the Argo 45 Option Purchase Price to the extent funded by or on behalf of one or more the CPBH Entities,[12] plus (iii) interest on $200 million (compounding monthly) at the non-default contract interest rate from and after August 19, 2022, plus (iv) payment of CPBH Entities' professional fees and expenses and from and after July 5, 2022 (such claim, the "Settlement Amount"). The applicable CPBH Entities shall retain their interests in the 533-535 West 27th Street property. The Settlement Amount must be paid in cash and in full on or before December 22, 2022 or such later date to which the CPBH Entities may agree in their sole discretion ("Payment Date"). As part of the Agreement, the CPBH Entities agree they shall not assert any other claim against the Debtors' estates or other Gans Entities other than the Settlement Amount, and the payment of the Settlement Amount under the Agreement will be in full and complete satisfaction of any and all claims the CPBH Entities has or may have against any of the Gans Entities so long as timely payment of the Settlement Amount is made.

31. **The Argo 45 Transaction**. Within no more than one day following the Execution Date (which was September 8, 2022), Argo 45 shall accelerate the closing date of the purchase option ("Purchase Option") provided in Section 30 of the lease

---

[11] Capitalized terms not otherwise defined shall have the meaning ascribed to such terms in the Agreement. The assets of the Gans Entities subject to the security interest shall include the property subject to the Purchase Option (defined herein) following the closing thereon.

[12] This shall be the amount that the applicable CPBH Entity will loan to Argo 45 to fund the exercise of the Purchase Option set forth in the applicable Option Lease. Such secured Argo 45 loan shall bear interest at the same rate presently set forth in the Senior Loan; provided, however that, subject to the timely payment of the Settlement Amount, such interest on the Argo 45 secured loan shall be waived.

4878-2123-5763, v. 1

(as amended, the "<u>Option Lease</u>") dated January 2013 between Argo 45 and SA Waterfront Realty, Inc., with respect the property located at 605 West 45th Street, New York, New York (Block 1093, Lot 28) ("<u>Option Property</u>"), and immediately provide evidence of such acceleration to the CPBH Entities – which Argo 45 has done on September 9, 2022 –  and within no more than ten (10) days following the Execution Date, actually close on the acquisition of the Option Property ("<u>Argo 45 Option Closing Date</u>").[13]  Clinton PB Holdings I, LLC will provide a secured loan to Argo 45 to fund (i) the acquisition of the Option Property at the purchase price for the Option Property set forth in the Option Lease and (ii) the reasonable and necessary closing costs (including reasonable legal fees, title insurance charges, prorations and recording fees and mortgage recording tax in an amount not to exceed 4% of the purchase price for the Option Property (the foregoing, with interest, except as waived as provided for herein with respect to the Settlement Amount, the "<u>Argo 45 Option Purchase Price</u>").  The amount of such secured loan shall either be added to the original mortgage or new individual mortgage, at Clinton PB Holdings I, LLC's option and in its sole discretion, and be subject to the same terms as the Senior Loan. On the Argo 45 Option Closing Date, Argo 45 will, concurrently with the closing, (i) cause the Option Property to be added to Clinton PB Holdings I, LLC's collateral in accordance with the terms of the Senior Loan documents, and (ii) provide Clinton PB Holdings I LLC a pledge of the membership

---

[13] Because the 10th day is Sunday, September 18th, the CPBH Entities agreed to extend the deadline for the Argo 45 Option Closing Date to Monday, September 19, 2022.

interests in Argo 45.  Immediately thereafter, Gans will cause a voluntary chapter 11 petition to be filed for Argo 45.

32.   **Consummation of Agreement under a Chapter 11 Plan**.   The Settlement Agreement will be implemented through the consensual bankruptcy cases of all the Gans Entities (other than Mr. Gans), including the Mezz Borrower Debtors, the PropCo Debtors and Argo 45.  The Settlement Amount will be paid under a sale and/or refinancing transaction under a Chapter 11 plan ("Plan") in form and substance acceptable to the CPBH Entities and for which CPBH will be a co-plan proponent.  The Plan will provide the CPBH Entities with the following treatment: (a) payment of the Settlement Amount on or before the Payment Date, or (b) if the Debtors fail to make such timely payment, then, one (1) Business Day after the Payment date (or such later dates as determined by the CPBH Entities in their sole and absolute discretion), the sale or sales of the assets of the Gans Entities to the CPBH Entities (or their designees) through a credit bid for an amount not to exceed the full amount of the Allowed Claim in full and complete satisfaction of any and all claims of any of the CPBH Entities has or may have against any of the Gans Entities ("Sale Treatment").  In furtherance of the Agreement and the Plan, the Parties agreed to the following milestones: (i) the hearing on the motion to approve the Agreement shall occur on the earliest available date available from the Bankruptcy Court upon the filing of such motion; (ii) the filing of the Plan and disclosure statement shall occur on or before **November 7, 2022**; (iii) a hearing to confirm the Plan shall occur on or before **December 8, 2022**; and (iv) the Plan's

4878-2123-5763, v. 1

effective date shall occur on or before **December 22, 2022**. The Plan, disclosure statement and all pleadings in furtherance thereof shall be in form and substance acceptable to the CPBH Entities. The Debtors shall not be permitted to withdraw the Plan (absent the consent of the CPBH Entities and, then, only to proceed with the Sale Treatment under the Sale Motion).

33. **Sale Treatment**. If the CPBH Entities are provided the Sale Treatment because the Settlement Amount is not paid on or before the Payment Date, then the CPBH Entities may elect (in their sole discretion) to either: (a) pay all allowed priority and allowed administrative expense claims so that the Sale Treatment occurs under the Plan and the Plan can go effective or (b) consummate the Sale Treatment through one or more sales under section 365 and 363 of the Bankruptcy Code outside of a plan (in which case, the Plan shall not go effective). Promptly upon the Bankruptcy Court's approval of the Agreement, the Debtors will file a sale motion ("Sale Motion") for a private sale to the CPBH Entities, as credit bidder,[14] as a backstop if the Plan fails to be confirmed or does not go effective with the Settlement Payment being made by the Payment Date or the CPBH Entities elect not to proceed with the Sale Treatment under a Plan.[15] The Sale Motion shall be in form and substance acceptable to the CPBH Entities. The Debtors shall not be permitted to withdraw the Sale Motion. If there is a transfer of assets to CPBH Entities (or their designees) through one or more sales and the Sale Treatment is

---

[14]In the event of such credit bid by the CPBH Entities, they shall be permitted to credit bid up to the full amount of their Allowed Claim and not the reduced Settlement Amount.

4878-2123-5763, v. 1

consummated under either the Plan or the Sale Motion, such assets will be transferred free and clear of any pledges, liens, security interests, encumbrances, claims, charges, service contracts, options and interests thereon, tenancies, and shall be delivered vacant to the CPBH Entities (or their designees).

34.    **Stay of Pending Actions**.  Within five days of the Execution Date (i.e., September 8, 2022), and provided that the closing of the Purchase Option has been accelerated in accordance with the Agreement, the Parties agree to seek a temporary stay ("Stay") of all proceedings in deadlines in the Foreclosure Action, the Argo 45 Action and the Conveyance Action by the filing of executed stipulations in the forms attached as Exhibits B, C, and D to the Agreement.[16]  If the Gans Entities default under any covenants or obligations in the Agreement, then (i) any Stay with respect to actions against non-Debtors shall immediately terminate, and the CPBH Entities shall have the unilateral right to inform the court of the same, and (ii) the CPBH Entities shall be entitled to request that the automatic stay with respect to the Debtors be lifted on an expedited basis, and Debtors consent to the same.

35.    **Releases.** The Settlement Agreement provides for releases in accordance with the following terms and conditions.

36.    *The Gans Releases*. The Agreement provides that effective as of the Execution Date (i.e., September 8, 2022) and subject only to approval of the

---

[15]In such instance, the CPBH Entities (or their designees) would be responsible for the payment of any transfer taxes for a sale or sales not consummated pursuant to a Plan.

[16] The Parties filed stipulations in the various pending actions seeking a stay on September 9, 2022.

Settlement Agreement by the Bankruptcy Court, on behalf of themselves and, to the fullest extent permitted by law, each of their respective current and former affiliates, successors, partnerships, and related parties and persons (including Gans' partners, family members, any related-party tenants and any other entities that Gans owns and controls) (the "Gans Releasors") shall release  the CPBH Entities, each of their respective current and former parents, affiliates, related parties, insiders, agents, members (and the ultimate owners of the CPBH Entities' members), subsidiaries, successors, predecessors, assignors and assigns, and each of their respective current and former officers, directors, employees, agents, assigns, assignees, affiliates, members, partnerships, partners, trustees, trusts, and attorneys from any and all known and unknown claims, including without limitation those arising out of or relating to the Senior Loan, the Mezz Loan, the Pref Loan, the Option Property, and the West 27 UCC Sale, and the transactions relating to the foregoing ("Gans Releases").

37.    The Gans Releases are automatically and immediately effective as of the entry of the Bankruptcy Court order approving the Agreement without the necessity of any further documentation.

38.    *CPBH Releases.* Upon payment of the Settlement Amount or transfer of the properties under the Sale Treatment (as may be applicable) and subject to the Gans Entities' compliance with the obligations set forth under the  Agreement, including the payment  of the Settlement Amount on or before the Payment Date or the cooperation on the Sale Treatment, the CPBH Entities will

18

(a)     execute a separate agreement, and

(b)     cause the entities that the CPBH Entities own and control (including,
without limitation, 533 West 27 Street JV LLC, Westside Realty of New
York, Inc., and 534 West 28th Pref LLC), the CPBH Entities' members,
and the ultimate owners of the CPBH Entities' members, to execute a
separate agreement, in each case releasing and discharging the Gans
Releasors from any and all known and unknown claims, arising out of or
relating to the Senior Loan, the Mezz Loan, the Pref Loan, and the
transactions relating to the foregoing ("CPBH Releases").

39.    **Confession of Judgment.**  Gans individually, and on behalf of the Gans
Entities, commits to cooperating fully in undertaking the actions required by the
Agreement, including to diligently prosecute the approval of the Agreement, and
thereafter to implement the transactions contemplated by the Agreement.  To
support these commitments, Gans executed and delivered on the Execution Date
confessions of judgment. Copies are attached as Exhibits E, F and G to the
Settlement Agreement.  One or more of the confessions of judgment may be filed
and entered immediately upon a breach or default by the Gans Entities under the
Agreement, in the CPBH Entities' sole and absolute discretion.

40.    **Professional Fees.**  Gans covenants to cause the Debtors (including the
Mezz Borrower Debtors and the PropCo Debtors) to pay their professional fees and
expenses and to remain current thereon, including post-petition professional fees,
and shall fund a retainer in an amount necessary to ensure payment of such fees

19

and expenses under a Plan.  All such fees and expenses shall be subject to any required approvals of the Bankruptcy Court.

41.  **Termination.**  The Agreement may be terminated:

    a) By the consensual written agreement of both the Debtors and the CPBH Entities; and

    b)  By the CPBH Entities, if the Debtors or Gans breach the Agreement.  Such breach can include, without limitation the failure of the Purchase Option to close on or before the Argo 45 Option Closing Date with the concurrent granting of the security interest hereunder.

42.  **Court Approval/Effective Date.**  The effectiveness of the Agreement and the terms thereof are subject to entry of an order, in form and substance acceptable to the Parties, by the Bankruptcy Court approving the Agreement (the date of entry of such order, the "Effective Date").  The Debtors agreed to file such motions and other filings as may be required to obtain approval of the Agreement by the earlier of (i) September 13, 2022[17] or (ii) one day following the Argo 45 Option Closing Date.  If the Agreement is not approved, the Agreement shall be null and void, shall not be admissible in any court proceeding for any purpose, and the fact that any Party entered into the Agreement shall not constitute evidence of the truth of any of the Parties' allegations or the admissibility of any evidence that may be offered by any Party in any court proceeding.

43.  **Good Faith Cooperation.**  The parties agree to cooperate in good faith to obtain the approval of the Agreement.

---

[17] At the request of the Gans Entities, the CPBH Entities agreed to extend the September 13th deadline by one day to September 14, 2022.

4878-2123-5763, v. 1

44.     **Final Settlement**.  The parties acknowledge and agree that the Agreement is a full and final settlement of the Allowed Claim and all other claims and disputes between the parties.

## RELIEF REQUESTED

45.     By this Motion, the Debtors seek, pursuant to Bankruptcy Rule 9019, approval of the Agreement, which is Exhibit 1 to the proposed order.

## BASIS FOR RELIEF

46.     The Bankruptcy Court "may approve a compromise or settlement" of the estate's claims or disputes with third parties.  Fed. R. Bankr. P. 9019(a). Rule 9019(a) of the Bankruptcy Rules specifically provides that "[o]n a motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  The legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the "best interests of the estate."  In re Adelphia Communications Corp., 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005) (citing In re Purofied Down Prods. Corp., 150 B.R. 519, 523 (S.D.N.Y. 1993)).

47.     The Supreme Court has set the standard for bankruptcy judges to follow in determining whether to approve compromises.  Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); see 10 Collier on Bankruptcy ¶9019.02[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (circuit courts have adopted a uniform standard for governing the approval of compromises based on TMT Trailer).  In considering whether to approve a settlement, a bankruptcy judge should:

21

apprise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

TMT Trailer, 390 U.S. at 424

48.     Approval of a proposed settlement is within the sound discretion of the bankruptcy court. See In re Remsen Partners, Ltd., 294 B.R. 557, 565 (Bankr. S.D.N.Y. 2003) (citing Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.), 762 F.2d 185, 189 (2d Cir. 1985)). This, however, does not require a trial, or mini-trial on the merits, but in reviewing the proposed settlement, "[t]he Court's responsibility is to 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" In re Drexel Burnham Lambert Group, Inc. 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991); see also, In re Remsen Partners, Ltd., 294 B.R. at 565 (citing In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993)).

49.     In the Second Circuit, courts balance seven interrelated factors in determining whether a settlement is fair and equitable. In re Iridium Operating LLC, 478 F.3d 452 (2d Cir. 2007). Those factors are:

(1) the balance between the litigation's possibility of success and the settlement's future benefits;

(2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;

4878-2123-5763, v. 1

(3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";

(4) whether other parties in interest support the settlement;

(5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;

(6) "the nature and breadth of releases to be obtained by officers and directors"; and

(7) "the extent to which the settlement is the product of arm's length bargaining."

*Id.* at 462 (citations omitted).

50.    Accordingly, the Court should approve the Agreement if, from the Debtors' perspective, it falls above the lowest point in the range of reasonableness. Here, the Agreement falls within well the "range of reasonableness," and satisfies the standard for approval.

51.    The first two *Iridium* factors favor approving the proposed Agreement. The CPBH Entities have asserted claims in excess of $237,230,043.00 as of September 6, 2022 (which amount will continue to increase as a result of the accrual of interest, the incurrence of costs and expenses, and the reimbursement of professional fees and expenses).  The Debtors and Gans have disputed such claims on multiple grounds including that certain CPBH Entities or their predecessors-in-interest, as applicable, allegedly breached fiduciary duties and allegedly tortiously interfered with the Debtors efforts to restructure and repay the indebtedness in a variety of ways including tying up title to the collateral with litigation, providing

23

inflated payoff demands, and allegedly diverting transactional opportunities from the Debtors, all of which has led to multiple complex lawsuits that are presently pending and others yet to be filed.  The CPBH Entities (and their predecessors) vigorously dispute all of these allegations as baseless, deny all liability and have initiated litigation against the Gans Entities.  As noted, these issues will continue to be hotly contested – and costly to resolve – absent the settlement embodied by the Settlement Agreement.  Importantly, the Settlement Agreement provides for a material voluntary reduction of the Allowed Claim and permits the Gans Entities continued time (in addition to the time spent to date) to consummate a transaction that would pay off the discounted Settlement Amount.  As a condition to the CPBH Entities providing the additional time and material compromise on its secured claims, the CPBH Entities and Gans Entities have agreed to the alternative consensual Sale Treatment should the Settlement Amount not be timely paid.  As such, the Agreement resolves numerous issues by providing a discounted payoff amount, agreed timing and structure and, finally, peace among the parties.

52.      The Agreement will be implemented through the consensual bankruptcy cases of all the Gans Entities (other than Gans), including the Mezz Borrower Debtors, the PropCo Debtors and Argo 45.  The Settlement Amount will be paid pursuant to a sale and/or refinancing transaction under a Chapter 11 plan ("Plan").  The Plan shall provide the CPBH Entities with the following treatment: (a) payment of the Settlement Amount on or before the Payment Date, or (b) if the Debtors fail to make such timely payment, then, one Business Day after the

24

Payment Date (or such later dates(s) as determined by the CPBH Entities in their

sole and absolute discretion), the sale or sales of the assets of the Gans Entities to

the CPBH Entities (or their designees) through a credit bid for an amount not to

exceed the full amount of the Allowed Claim in full and complete satisfaction of any

and all claims of any of the CPBH Entities has or may have against any of the Gans

Entities (defined above as "Sale Treatment").

53.     If the CPBH Entities are provided the Sale Treatment because the

Settlement Amount is not paid on or before the Payment Date, then the CPBH

Entities may elect (in their sole discretion) to either (a) pay all allowed priority and

allowed administrative expense claims so that the Sale Treatment occurs pursuant

to the Plan and the Plan can go effective of (b) consummate the Sale Treatment

through one or more sales under sections 365 and 363 of the Bankruptcy Code

outside of a plan (in which case the Plan shall not go effective).  Promptly upon the

Bankruptcy Court's approval of the Agreement, the Debtors shall file a sale motion

("Sale Motion") for a private sale to the CPBH Entities, as credit bidder, as a

backstop in the event the Plan fails to be confirmed or does not go effective with the

Settlement Payment being made by the Payment Date or the CPBH Entities elect

not to proceed with the Sale Treatment under a Plan.

54.     The Debtors determined in their business judgment that entering into

the Agreement with the CPBH Entities would maximize value of the Debtors'

estates because under the Agreement, the Allowed Claim is being reduced to the

Settlement Amount (as set forth in paragraph 30 above), which is more than $45

25

million (including the waiver of default rate for interest) less than the Allowed

Claim of the CPBH Entities, as long as it is paid by the Payment Date. Moreover,

under the Agreement, CPBH started accruing interest at the contract rate rather

than the default rate of interest as of August 19, 2022, saving the Debtors' estates

over $2,000,000 in claims for interest per month. Furthermore, Debtors will have

approximately three months to continue their existing efforts to market the

Properties and obtain the highest and best value for the Properties.[18]

55.     Under the Agreement, within five (5) days of its execution and

provided that the Purchase Option has been accelerated, the parties agreed to seek

a temporary stay of all proceedings and deadlines in (i) the Foreclosure Action, (ii)

the Argo 45 Action, and (iii) the Conveyance Action. Subsequently, upon the

payment of the Settlement Amount or transfer of the properties under the Sale

Treatment (as may be applicable), and subject to the Gans Entities' compliance with

the obligations set forth in the Agreement, the CPBH Entities will execute a release

(which is explained in paragraph 9 of the Agreement).

56.     The settlement will save the Debtors many millions of dollars, avoid

complex and protracted litigation, including in these cases, the result of which is

uncertain, and avoids unnecessary expenses (including substantial legal fees),

inconvenience and delay. Moreover, because of the release, Gans will be released

from any obligations he may have had with respect to his guarantees. Furthermore,

any delay in resolving this dispute because of the litigations or otherwise will likely

---

[18] The Debtors have been marketing the properties for several months and believe they can confirm a

4878-2123-5763, v. 1

result in the CPBH Entities' claims increasing due to the accrual of additional interest (at the 20% blended default rate rather than the non-default contract rate of approximately 9.5%)[19] and additional legal fees. To avoid (i) the unnecessary litigation[20], (ii) the accrual of additional interest, (iii) wasting the Debtors' equity, and (iv) the release of the guaranty, the settlement should be approved.

57.    As addressed above, absent approval of the Agreement, the three actions will need to be resolved (in one forum or another), which will result in additional administrative expenses including legal fees. This settlement represents the most cost effective and efficient solution to resolve the litigation and removes obstacles to these cases by providing the Debtors with an opportunity to file a plan of reorganization to promptly emerge from bankruptcy.

58.    The third factor asks the court to evaluate whether the settlement is in the best interests of the creditors and the fourth factor looks to whether other parties in interest support the settlement. *Iridium*, 478 F.3d at 465. Both factors favor the approval of the Agreement. In *Iridium*, the Second Circuit found that both factors weighed in favor of approval, where no creditors objected to the proposed settlement, except for an alleged administrative creditor, who was also the primary defendant in another action. The court found it "telling that no other creditor object[ed] to the Settlement." Id. The Agreement is in the best interest of the Debtors, their estates and creditors because it (i) resolves the outstanding claims

_____

plan or consummate a 363 sale within this time frame.
[19] The actual interest rate is not a single rate and is based upon the specific terms of the various agreements.

4878-2123-5763, v. 1

and litigations between the Debtors and the CPBH Entities, (ii) avoids protracted, expensive and uncertain litigation, (iii) avoids excessive delay in resolving the dispute, and (iv) allows the Debtors to submit a plan of reorganization so it can emerge from bankruptcy.

59.    The Agreement requires approval of this Court.  If the Agreement is approved and payment is made under the Agreement, then the settlement benefits all of the Debtors' creditors because the Debtors will move forward in their chapter 11 cases and propose a plan where their creditors can receive a distribution.  Thus, here, as in *Iridium*, the third and fourth factors favor approval of the Agreement.

60.    The fifth factor is satisfied because the Court and counsel are competent and knowledgeable.  The sixth factor favors approval of the Agreement because the broad releases are necessary to curtail any future litigation between the parties based on past events.  The settlement provides "total peace" between two warring groups in hotly contested litigation that has been ongoing and will continue otherwise (in one forum or another). The releases were necessary to resolve the ongoing litigation.

61.    Finally, the Agreement has been negotiated between the parties' counsel and stems from good faith, arm's length bargaining.  The parties executed the Agreement on their own free will rather than continuing the litigations.

62.    Based on the above, the Debtors have shown that they exercised their business judgment in entering into the settlement with the CPBH Entities and

---

[20] All litigation has risks and there can be no guaranty of success with respect to the litigation. There

have shown a sound business justification for the proposed settlement.  The Debtors submit that the Agreement is fair and reasonable, falls well above the lowest level of reasonableness and is in the best interests of the Debtors and their estates.

63.    Accordingly, the Debtors request that the Court approve the Agreement.

## NOTICE

64.    The Debtor has provided notice via overnight delivery to (i) the Office of the United States Trustee; (ii) parties who have filed notices of appearance; (iii) counsel to CPBH entities, and (iv) all creditors of the Debtors.  The Debtors submit that said notice is adequate and proper.

65.    No previous application for the relief herein requested has been made to this or any other Court.

---

are issues and uncertainty with respect to each of the litigations.

4878-2123-5763, v. 1

**WHEREFORE,** the Debtors respectfully requests that the Court approve and authorize the Agreement (with exhibits), together with such other and further relief as is just and proper under the circumstances.

Dated:        New York, New York
              September 14, 2022

**LEECH TISHMAN ROBINSON BROG, PLLC**
*Proposed Attorneys for the Debtors and Debtors in Possession*
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: (212) 603-6300


By:  /s/ Fred B. Ringel
        **Fred B. Ringel**
        **Steven Eichel**
        **Clement Yee**

4878-2123-5763, v. 1