LEECH TISHMAN ROBINSON BROG PLLC　　　　　　　　Hearing Date: September 29, 2022
875 Third Avenue, 9th Floor　　　　　　　　　　　　　　　　　Hearing time: 10:00 a.m.
New York, New York 10022
Tel. No.: 212-603-6300
Fred B. Ringel, Esq.
Clement Yee, Esq.
*Attorneys for the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 11

**STARLIN LLC** *et al.*,[1]　　　　　　　　　　　　　　　　　　　Case No. 22-10888 (MG)

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Jointly Administered)

　　　　　　　　　　　　　　　　Debtors.
-------------------------------------------------------X

## DECLARATION OF MARK PODGAINY IN SUPPORT OF DEBTORS' MOTION TO APPROVE SETTLEMENT AGREEMENT

　　　Mark Podgainy declares under penalty of perjury that these statements are true and correct to the best of my knowledge, information and belief:

　　　1.　　I am a managing director of Getzler Henrich & Associates LLC ("Getzler Henrich"), the Debtors' proposed financial advisor. Except as otherwise indicated, all facts in this declaration are based on my personal knowledge, my review of relevant documents, communications with the Debtors' management and professionals, or my opinion based on my experience and involvement in these

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Starlin LLC (6765); 610 West 46th Street Enterprises, Ltd. (1937); RM Holdings Company Inc. (2733); BRC Owners, L.P. (5295); RG Mezz LLC (2437); RG Mezz III LLC (2895); RG Mezz V LLC (9871); and RG Mezz VI LLC (8222); 175 Spring Street, LLC (4249); 610 West 46th Street LLC (3898); 616-620 West 46th Street LLC (3706); 616 11th Avenue LLC (5258); 609 11th Avenue LLC (5047); 613 11th Avenue LLC (6820); 617 11th Avenue LLC (9177); 623 11th Avenue LLC (5464); 108 Merrick Boulevard LLC (3250); 533 West 27 Street Common Member LLC (4518); and Argo 45, LLC (1499).

1

bankruptcy cases. As a result, I am thoroughly familiar with the facts set forth below.

2. I submit this declaration in support of the Debtors' application to approve the settlement agreement ("Settlement Agreement") between the Debtors and Clinton PB Holdings I LLC, Clinton PB Holdings II LLC, and Clinton PB Holdings III LLC (collectively, the "CPBH Entities").

3. I have reviewed the Debtors' Motion to Approve Settlement Agreement ("Motion") and Settlement Agreement and am familiar with their contents.

4. The Settlement Agreement, once it is approved by the Court and its terms are implemented through timely performance by each of the Debtors and each of the CPBH Entities, will result in a consensual, global resolution of over $240 million of claims between over 25 entities and individuals in what has been a contentious dispute that has been ongoing since at least 2020. As a result, the Debtors' properties will be developed in the near future through either (i) a refinancing or sale under a Chapter 11 plan in satisfaction of the CPBH Entities' claims at a significant discount of more than $45 million (which voluntary discount grows by the continued accrual of *default* interest that would not be charged as part of the Settlement Amount[2]); or (ii) surrendered to the CPBH Entities (or their designees) if the Debtors cannot consummate a transaction allowing for the timely payment of the reduced Settlement Amount, in either case in full and complete

---

[2] Capitalized terms not otherwise defined shall have the meaning ascribed to such terms in the Agreement.

2

satisfaction of all of the CPBH Entities and affiliates secured and unsecured claims against the Debtors, Robert Gans, and his family members. Furthermore, this global settlement also saves each side[3] untold millions of dollars in legal and related expert and other associated expenses as well as the uncertainty of multiple litigations that could take an extended period to resolve.

5. The salient terms of the Settlement Agreement are summarized in paragraphs 29 through 44 of the Motion, however, the salient points may be summarized[4] as follows:

   a. The CPBH Entities will receive an allowed claim, which is as of September 6, 2022, was in the amount of $237,230,043 (plus default contract interest, fees and expenses) plus the Argo 45 Option Purchase Price;

   b. The CPBH Entities have agreed to accept a material reduction to their Allowed Claim as payment of the Settlement Amount, which is comprised of (i) $200 million, plus (a) the Argo 45 Option Purchase Price, (b) interest on the $200 million (compounding monthly) at the non-default contract interest rate from and after August 19, 2022, and (c) payment of CPBH Entities' professional fees and expenses and from and after July 5, 2022. The Settlement Amount must be paid in cash and in full on or before December 22, 2022 or such later date to which

---

[3] Ultimately, this cost savings benefits the Debtors' estates which would otherwise be subject to reimbursement claims for costs associated with the enforcement of remedies by the CPBH Entities.
[4] The foregoing is only a summary of the Settlement Agreement and the Court is referred to the Settlement Agreement for the complete terms of the parties' agreement for which approval is sought.

3

the CPBH Entities may agree in their sole discretion;

c. Argo 45 LLC ("Argo Debtor") will have closed on its option to purchase the real property located 605 West 45th Street, New York, New York (which closing occurred on September 19, 2022) and pledged the acquired property as additional collateral to the CPBH Entities (which pledge occurred on September 19, 2022) and the Argo Debtor agreed to file its own chapter 11 case, which it commenced on September 20, 2022;

d. The Settlement Amount will be paid under a sale or refinancing transaction under a Plan in form and substance acceptable to the CPBH Entities and for which CPBH will be a co-plan proponent. The Plan will provide the CPBH Entities with the following treatment: (i) payment of the Settlement Amount on or before the Payment Date, or (ii) if the Debtors fail to make such timely payment, then, one (1) Business Day after the Payment Date (or such later dates as determined by the CPBH Entities in their sole and absolute discretion), the sale or sales of the assets of the Gans Entities to the CPBH Entities (or their designees) through a credit bid for an amount not to exceed the full amount of the Allowed Claim in full and complete satisfaction of all claims of any of the CPBH Entities has or may have against any of the Gans Entities. The filing of the Plan and Disclosure statement shall occur on or before November 7, 2022, with a hearing to

4

confirm the Plan on or before December 8, 2022, and the Plan going effective on or before December 22, 2022;

    e. If the CPBH Entities are provided the Sale Treatment because the Settlement Amount is not paid on or before the Payment Date, then the CPBH Entities may elect (in their sole discretion) to either: (a) pay all allowed priority and allowed administrative expense claims so that the Sale Treatment occurs under the Plan and the Plan can go effective or (b) consummate the Sale Treatment through one or more sales under section 365 and 363 of the Bankruptcy Code outside of a plan (in which case, the Plan shall not go effective); and

    f. The Settlement Agreement also provides for mutual releases between the parties.

6.    The Settlement Agreement provides for a material voluntary reduction of the Allowed Claim and permits the Gans Entities additional time to consummate a transaction and pay off the discounted Settlement Amount. As a condition to the CPBH Entities providing the additional time and material compromise on its secured claims, the CPBH Entities and Gans Entities have agreed to the alternative consensual Sale Treatment should the Settlement Amount not be timely paid. Thus, the Settlement Agreement resolves numerous issues by providing a discounted payoff amount, agreed timing and structure and, finally, peace among the parties.

7. The Debtors determined in their business judgment that executing the Agreement with the CPBH Entities would maximize value of the Debtors' estates because under the Settlement Agreement, the Allowed Claim is being reduced to the Settlement Amount, which is more than $45 million (including the waiver of default rate for interest) less than the Allowed Claim of the CPBH Entities, as long as it is paid by the Payment Date. Moreover, under the Agreement, CPBH started accruing interest at the contract rate rather than the default rate of interest as of August 19, 2022, saving the Debtors' estates approximately $2,000,000 in interest per month. Furthermore, Debtors will have approximately three months to continue their existing efforts to market the Properties and obtain the highest and best value for the Properties.[5]

8. The settlement will save the Debtors' estates many millions of dollars in administrative expenses and avoid complex and protracted litigation, the result of which is inherently uncertain. Thus, the proposed settlement avoids the substantial costs (including legal fees), inconvenience and delay. Moreover, because of the releases, Robert Gans will be released from any obligations he may have had on his guarantees. Furthermore, any delay in resolving disputes because of the litigation would likely increase the CPBH Entities' claims due to the continuing accrual of additional interest (at the 20% blended default rate rather than the non-default contract rate of approximately 9.5%)[6] and additional legal fees.

---

[5] The Debtors have been marketing the properties for several months and believe they can confirm a plan or consummate a 363 sale within this time frame.

[6] The actual interest rate is not a single rate and is based on the specific terms of the various agreements.

9. If the Settlement Agreement is approved and payment is made under the Settlement Agreement, then the settlement will benefit all of the Debtors' creditors because the Debtors will move forward in their chapter 11 cases and propose a plan where their creditors can receive a distribution.

10. For these reasons, approval of the Settlement Agreement is in the best interest of the Debtors, their estates and creditors. The Debtors believe that the consensual resolution of these cases through the approval of the Settlement Agreement allows the Debtors to submit a confirmable plan of reorganization so it can expeditiously emerge from its chapter 11 case.

I declare under penalty of perjury and according to 28 USC §1746 that the foregoing is true and correct to the best of my knowledge, information and belief. Executed on September 27, 2022

/s/ Mark Podgainy
Mark Podgainy

4887-3487-6981, v. 4